EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Applicant,

v.

The BOARD OF PUBLIC EDUCATION
FOR the CITY OF SAVANNAH AND
the COUNTY OF CHATHAM, Respon-
dent.

No. CV486–117.

United States District Court,
S.D. Georgia,
Savannah Division.

May 30, 1986.

Johnny J. Butler, Phillip B. Sklover, E.E.
O.C., Washington, D.C., George H. Darden,
Floyd C. Hale, Theodore T. Grove, Atlanta,
Ga., for applicant.

Steve Scheer, Ed Lee, Savannah, Ga., for
respondent.

## ORDER

EDENFIELD, District Judge.

Before the Court is Applicant's request
for an order to show cause why two sub-
poenas should not be enforced.

### I. *Background*

The Equal Employment Opportunity
Commission ("EEOC") has applied for en-
forcement of two subpoenas *duces tecum*
served upon respondent, The Board of Pub-
lic Education for the City of Savannah and
the County of Chatham (the "Board"). The
subpoenas arise out of the investigation of
separate charges of racial discrimination
filed with the EEOC by Greta Blake, a
black, and Mildred J. Madray, a white, both
former employees of the Board.

In both cases the Director of the EEOC's
Atlanta District Office, Harris A. Williams,
issued the subpoenas. Thereafter, respon-
dent filed motions to revoke or modify the

subpoenas with the Atlanta District Office. The District Director denied said motions. The Board took *no* further administrative action within the EEOC to obtain reversal of the District Director's decision.

Respondent has refused to comply with the subpoenas, and the EEOC filed the instant action. The Board set out in its briefs several arguments as to why the subpoenas should not be enforced. However, at oral argument, the Board advanced only two.[1] The Court will consider them seriatim.

## II. *Discussion*

### A. *Service*

▮ Respondent first contends that the EEOC has failed to comply with its own regulations regarding administrative subpoenas, and that this default prohibits judicial enforcement of the subpoenas until proper service has been made. The Board asserts that once it filed a motion to revoke or modify the subpoenas, the EEOC was under an affirmative duty pursuant to 29 C.F.R. § 1601.16(b) to properly serve it with a copy of its final determination.[2]

To properly understand this contention, it is important to note the procedures to be followed if one desires to quash an EEOC subpoena. If an EEOC District Director issues the subpoena, as was the case here, the procedure is different from that utilized when a Commission member issues the subpoena. In the latter situation, the Code of Federal Regulations provides:

(b) Any person served with a subpoena who intends not to comply therewith shall within five days (excluding Saturdays, Sundays and Federal legal holidays) after the date of service of the subpoena upon him or her, petition the General Counsel by mail to revoke or modify the subpoena. Such petition shall be mailed to 2401 E Street NW., Washington, D.C. 20506, and a copy thereof shall be served on the person who issued the subpoena. The petition shall separately identify each portion of the subpoena with which the petitioner does not intend to comply and shall state, with respect to each such portion, the grounds upon which the petitioner relies. A copy of the subpoena shall be attached to the petition and shall be designated "Attachment A." Within 8 days after receipt thereof or as soon thereafter as practicable, the General Counsel shall make a determination upon the petition, stating reasons, and shall submit the petition and determination to the Commission for its review. The Commission shall review the petition and make a final determination. A commissioner who has issued a subpoena shall abstain from reviewing any petition to modify or revoke the subpoena. The Commission shall serve a copy of the final determination of the petition upon the petitioner. For purposes of this section, service shall be

---

1. The issue argued forcefully in the briefs and abandoned at oral argument was the Board's contention that the subpoena issued with regard to the allegations made by Mildred J. Madray was too burdensome to be enforced. Counsel for the Board advised the Court at the April 25, 1986 hearing that this dispute had been resolved.

2. 29 C.F.R. § 1601.16(b) (1985) provides that after the *Commission* reviews a petition to revoke or modify a subpoena, and makes a final determination upon it, "[t]he Commission shall serve a copy of the final determination of the petition upon the petitioner. For purposes of this section, service shall be made and proof thereof established pursuant to section 11(4) of the National Labor Relations Act, as amended, 29 U.S.C. § 161(4), as made applicable to Commission hearings and investigations by section

710 of Title VII[.] [42 U.S.C. § 2000e–9]." 29 U.S.C. § 161(4), referred to *supra*, reads as follows:

(4) *Process, service and return—Fees of witnesses.* Complaints, orders, and other process and papers of the Board, its member, agent, or agency, may be served either personally or by registered or certified mail or by telegraph or by leaving a copy thereof at the principal office or place of business of the person required to be served. The verified return by the individual so serving the same setting forth the manner of such service shall be proof of the same, and the return post office receipt or telegraph receipt therefor when registered or certified and mailed or when telegraphed as aforesaid shall be proof of service of the same....

made and proof thereof established pursuant to section 11(4) of the National Labor Relations Act, as amended, 29 U.S.C. 161(4), as made applicable to Commission hearings and investigations by section 710 of Title VII[.]

29 C.F.R. § 1601.16(b) (1985).

There is a proviso in the preceding section which deals with motions to revoke or modify subpoenas issued by a District Director. It states:

> *Provided, however,* that, whenever the subpoena was issued by the District Director ... the petition to revoke or modify the subpoena shall be mailed to the Director, within the 5-day period specified above, who will make a determination on the petition. Any petitioner who wishes to appeal the determination of the Director shall do so by following the standard procedures specified above. Such appeal shall, in addition, be clearly labeled as "Appeal of Petition to Revoke or Modify Subpoena," and shall attach the initial petition and determination, designated as "Attachments B and C." No argument not presented to the District Director, the Program Director, Office of Program Operations, Director of Systemic Programs, Office of Program Operations, or Directors, Regional Programs, Office of Program Operations will be considered by the Commission.

*Id.*

Although this provision is not explicit as to service requirements to be followed by the District Director, one must assume that his determinations should be served in the same manner as those of the Commission. This conclusion is even more apparent when one examines § 11(4). *See supra* note 2. It provides that the service requirements specified therein apply to papers of "the Board, its member, *agent,* or *agency....*" *Id.*

The Board asserts that the EEOC failed to follow the service requirements of § 11(4) here in that the District Director's determination was not sent certified mail, return receipt requested. In fact, the Board stated at oral argument that it was mailed to the wrong address. Therefore, the Board contends that the EEOC cannot seek enforcement of its subpoenas until all service requirements have been met.

The EEOC asserts that even if there was a procedural default on its part, the Board does not show how it was prejudiced or harmed by said failure. It cites *EEOC v. Airguide,* 539 F.2d 1038 (5th Cir.1976) for the proposition that

> when an agency neglects to follow a procedural rule but its failure inflicts no significant injury on the party entitled to observance of the rule, the error does not prevent further administrative or judicial action.

*Id.* at 1042.

Had the EEOC's default prevented the Board from appealing the District Director's determination to the General Counsel and Commission, the Court would be sympathetic to the Board's argument, for in this Circuit, a failure to exhaust all administrative procedures for review of an EEOC subpoena bars later judicial efforts for relief from it except on Constitutional grounds. *See EEOC v. Cuzzens of Georgia,* 608 F.2d 1062 (5th Cir.1979). The Board fails to show, however, that the EEOC's failure to follow these procedural rules inflicted any serious injury upon it under the *Airguide* standard.[3] Therefore, the Board's first contention is without merit.

### B. *Does the EEOC Have Authority to Investigate the Board?*

■ The Board also contends that as a governmental entity, it is not subject to the EEOC's subpoena power. It asserts that Section 5 of Reorganization Plan No. 1 of

---

**3.** Under *Cuzzens,* because the Board failed to exhaust its administrative remedies within the EEOC as to these subpoenas, it should be barred from seeking judicial relief from the subpoenas at this time. The Court will nevertheless reach the Board's second contention in Part II B, *infra.*

1978 transferred [4] the EEOC's authority to investigate state or local governmental units to the Attorney General. Accordingly, respondent asserts that the EEOC cannot proceed against it.

The EEOC asserts that it is important to distinguish § 706 actions such as this, where private parties file charges and the Commission investigates them, from § 707 actions brought by the Attorney General. Further, the EEOC argues that § 706(f)(1),[5] 42 U.S.C. § 2000e–5(f)(1), makes it clear that the Commission's effort "to secure from the respondent a conciliation agreement" is the last step before litigation on the merits in the multistep, statutory enforcement procedure which authorizes the EEOC to investigate a charge of unlawful discrimination in employment, to issue a determination *after such investigation* concerning whether there is reasonable cause to believe that the charge is true, and finally to attempt to negotiate a conciliation agreement. (Emphasis added).

Because Section 706(f)(1) provides that the Attorney General, rather than the Commission, may bring a civil action regarding the merits of a charge against a "governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission," the EEOC contends that it has its customary authority to implement each step in the usual statutory enforcement procedures,

including the authority to investigate a charge filed by a private party against a governmental agency or political subdivision, up to and including the Commission's effort "to secure from the respondent a conciliation agreement."

The EEOC cites several decisions where it contends that courts have enforced EEOC subpoenas against governmental agencies. The Commission cites: *EEOC v. University of New Mexico,* 504 F.2d 1296 (10th Cir.1974); *Nueces City Hospital District v. EEOC,* 518 F.2d 895 (5th Cir.1975); *EEOC v. Bi-State Development Agency,* 662 F.2d 486 (8th Cir.1981); *EEOC v. Ohio Bureau of Employment Services,* 28 FEP Cases 461 (S.D.Ohio 1982); *EEOC v. DeKalb County Sheriff's Dept.,* 36 FEP Cases 620 (N.D.Ga.1984).

A reading of these decisions discloses that the subpoenas were indeed enforced; however, the first two cases predate the 1978 Reorganization Plan relied upon by the Board. Moreover, none of the decisions discuss the problem raised in this case. The Court's research has failed to disclose *any* decision on this point, either. Evidently, the Court is faced with a question of first impression: Did the Reorganization Plan of 1978, which transferred all § 707 power from the EEOC to the Attorney General, also withdraw from the EEOC its authority to investigate governmental entities under § 706? A study of these

---

**4.** Section 5 of Reorganization Plan No. 1 provided:

> Any function of the Equal Employment Opportunity Commission concerning initiation of litigation with respect to State or local government, or political subdivisions under Section 707 of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. 2000e–6), and all necessary functions related thereto, *including investigation, findings, notice and an opportunity to resolve the matter without contested litigation,* are hereby transferred to the Attorney General, to be exercised by him in accordance with procedures consistent with said Title VII. The Attorney General is authorized to delegate any function under Section 707 of Title VII to any officer or employee of the Department of Justice.

*See* 1978 U.S.Code Cong. & Ad.News 9800 (emphasis added). The formal implementation of

this aspect of the Reorganization Plan was effectuated on July 1, 1978, by Exec.Order 12068, 43 Fed.Reg. 28971 (1978), 1978 U.S.Code Cong. & Ad.News 9729. Transfers of existing functions from one agency to another are allowed under 5 U.S.C. § 906.

**5.** Section 706(f)(1) provides in pertinent part:

> ... In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court.

provisions and their legislative history reveals that it did not.

First, it is helpful to analyze the difference between § 706 and § 707. Section 706, 42 U.S.C. § 2000e–5, allows the EEOC to investigate and make determinations based upon charges of discrimination brought by individual citizens. *See* § 706(b). By contrast, a § 707 action, 42 U.S.C. § 2000e–6, does not have its genesis in a charge filed by a private individual. Rather, a § 707 complaint may be filed whenever the "Attorney General has reasonable cause to believe that any person ... is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by [Title VII]...." *See* § 707(a). There is no mention of charges filed by private parties in § 707. These two provisions are complementary, not conflicting. Section 706 provides a vehicle for individuals to charge employers with discrimination, whereas § 707 allows the Attorney General, *on his initiative*, to attack discrimination by employers.

Two noted commentators view the EEOC's role under § 706 in the following way:

> With respect to state and local government employers, § 706 provides for the EEOC to perform the same functions it performs with respect to charges against private sector employers up to, but not including, the point of litigation. At that point, with respect to individual charges against public sector employers, § 706(f)(1) provides:
>
>> "In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent...."

*See* B.L. Schlei & P. Grossman, *Employment Discrimination Law* p. 1178 (2nd ed. 1983) [hereinafter cited as Schlei & Grossman].

Second, an analysis of the legislative history of these two provisions shows that the transfer of § 707 functions from the EEOC to the Attorney General did not affect the EEOC's power under § 706. From 1965 until 1972, when Title VII was amended, the Act was only applicable to private employers.[6] The Justice Department possessed the sole governmental litigation authority under the original § 707(a). With the 1972 amendments to Title VII, that changed. Title VII coverage was extended to prohibit employment discrimination by governmental entities (§ 701(a)), and the Justice Department was given the right under § 706(f)(1), *supra* at note 5, to file suit against public employers based on *individual* charges of discrimination after investigation and referral by the EEOC. Additionally, and important to note for this action, the functions of the Attorney General under § 707 were *transferred* to the EEOC. *See* § 707(c). This change became effective in 1974. *Id.*

A dispute then developed among the courts as to whether the 1972 Amendments left the Justice Department *any* authority to bring suits against governmental entities under § 707(a). *Compare United States v. Pima County Community College,* 409 F.Supp. 1061 (D.Ariz.1976) (Justice Department retained no authority) *with United States v. City of Milwaukee,* 439 F.Supp. 264 (E.D.Wis.1977) (Justice Department did retain authority). To clear up the dispute, Schlei and Grossman state that President Carter, in 1978, utilizing his authority under 5 U.S.C. § 906, issued Reorganization Plan No. 1, which shifted *all* functions of the EEOC concerning initiation of litigation with state or local governments *under § 707* back to the Attorney General.

Although the EEOC's authority under § 707 was transferred back to the Attorney General, it retained its § 706 power to investigate governmental entities. Although

---

**6.** *See generally* Schlei & Grossman at Chapter 32.

any suit must be filed by the Attorney General, when a private party files a charge with the EEOC under § 706, the Commission rightly argues that it may still engage in its normal pre-litigation activities. This includes, of course, the ability to investigate and issue subpoenas. Therefore, the EEOC has the authority to issue these subpoenas, and because they seek relevant, discoverable information, they will be enforced.

### III. *Conclusion*

The two subpoenas issued by the EEOC should be enforced. This Court orders the Board to comply fully with them.

SO ORDERED.

United States District Court, S.D. Florida.